JOURNAL ENTRY
{¶ 1} On September 26, 2002, this court issued an opinion in this case affirming James Stafford's ("Appellant") conviction and ten-year prison term for involuntary manslaughter. We also modified Appellant's sentence to reflect the proper number of days to which he was entitled credit for time served between arrest and judgment. The primary issue in that case was whether Appellant should be credited for the time he spent in civil commitment under R.C. 5122. We held that he was not entitled to such credit. On October 7, 2002, Appellant filed two motions, one asking us to reconsider our decision under App.R. 26(A) and another requesting that we certify a conflict as defined by App.R. 25.
 {¶ 2} Before addressing Appellant's motions, we note that Appellee has offered little in the way of a response to these pleadings. Under the rules governing motions for reconsideration and certification the party opposing such requests must submit written answers. Appellee, on behalf of the state of Ohio, filed what can be charitably characterized as a rudimentary response to the motion for reconsideration and none whatsoever to the request to certify a conflict. We have come to expect more from those representing the interests of the state of Ohio, and are disappointed by such disregard for the rules that govern these proceedings.
 {¶ 3} An application for reconsideration properly involves an obvious error in the court's decision or a material issue the Court should have considered but did not. In re Ware, 2nd Dist. No. 19302, 2002-Ohio-6086; citing Columbus v. Hodge (1987), 37 Ohio App.3d 68,523 N.E.2d 515. Appellant bases his application for reconsideration on two grounds. Initially, Appellant complains that R.C. 2967.191 and 2945.38
violate the state and federal constitutions because they do not, "provide jail time credit for time served in a mental hospital arising out of the offense." According to Appellant, he is constitutionally entitled to receive credit for all the time he spent involuntarily committed pending his trial, and our opinion renders R.C. 2967.191 and 2945.38
unconstitutional because now he must serve part of his sentence twice. We cannot agree with Appellant's assertions.
 {¶ 4} As we noted in our opinion, Appellant is entitled to credit for all time spent in custody under R.C. 2967.191 and 2945.38. Nevertheless, Appellant is not entitled to receive credit for the time during which he was civilly committed under R.C. 5122. For one thing, Appellant fails to acknowledge the obvious and inescapable impact that R.C. 5122 has on this case. The record is clear that when the probate court civilly committed Appellant between March 9, 1994 and October 21, 1998, it did so not for purposes of restoring him to competency under R.C. 2945.38, but because clear and convincing evidence demonstrated that his mental condition had deteriorated to such an extent that he had become a danger to himself or others. Accordingly, Appellant's detention from March of 1994 until October of 1998 cannot be treated as confinement "arising out of the offense" under which he was convicted as contemplated under R.C. 2967.191. Since R.C. 5122 avoids any mention of credit for time served, we have no choice but to conclude that the legislature intended none.
 {¶ 5} Appellant next proposes that we ought to reconsider our previous conclusion that his re-indictment, which occurred while he was still civilly committed and therefore contrary to R.C. 2945.38, was in essence harmless because he was not arraigned in connection with the new charges until after doctors discharged him from civil commitment. Appellant continues to maintain, as he did during oral argument, that the state's failure to delay re-indictment until after he became competent divested the trial court of jurisdiction over his case and mandates dismissal. In this argument Appellant offers nothing, beyond his categorical insistence that our opinion was decided incorrectly, to demonstrate that we committed an obvious error or failed to consider a material issue in connection with this case. Appellant falls far short of the standard and his application is hereby denied.
 {¶ 6} Appellant next requests this court to certify the existence of a conflict in decisions between appellate districts. Article 4, Section 3(B)(4) of the Ohio Constitution requires this court to certify the record of a case to the Ohio Supreme Court when its judgment is in conflict with a judgment pronounced on the same question by another court of appeals. According to Appellant, "if [his] appeal had been decided in the First Appellate District, the Second Appellate District, or the Ninth Appellate District his judgment of conviction would have been reversed." (Motion to Certify Conflict Pursuant to Appellate Rule 25, p. 1). Appellant maintains that the following cases somehow conflict with our decision in his own case: State v. Redfeairn (Sept. 12, 1983), 2nd Dist. No. CA 7371; State v. Davis (1983), 12 Ohio App.3d 84; and State v.Brown (1981), 2 Ohio App.3d 400. After reviewing these cases, however, we must conclude that they are legally and/or factually distinguishable from the instant case. Therefore, no conflict exists.
 {¶ 7} A careful reading of the Redfeairn case indicates that the issue before the court was not that the prosecutor sought a grand jury indictment before the defendant was released from civil commitment, but the fact that when the defendant was served with the indictment there was nothing in the record to demonstrate that he had been discharged from the hospital. Id. at *7. Similarly, in Davis, supra, the focus was on whether the defendant was voluntarily or involuntarily committed at the time he was indicted. The court decided that the defendant was hospitalized voluntarily at the time of indictment and thus, his indictment process was proper. Because this was the case, the court did not address any issues as to reindictment during or after an involuntary commitment.
 {¶ 8} Brown, supra, is also easily distinguished from the case at bar. There, the court was asked to decide whether R.C. 2945.38 allowed prosecutors to reinstate old indictments which had been previously dismissed under R.C. 2945.38(H) once the defendant was no longer subject to civil commitment. In holding that a new indictment was required, the court stressed that, "[t]here can be no trial, conviction, or punishment for a crime without a formal and sufficient accusation. In the absence thereof the court acquires no jurisdiction whatever, and if it assumes jurisdiction, a trial and conviction are a nullity." Id. at 402; citing,Stewart v. State (1932), 41 Ohio App. 351, 353-354, 181 N.E. 111.
 {¶ 9} While Appellant chooses to distort Brown and the facts of this case, our holding in his case in no way involves the principles espoused in Brown. The record before us does reflect that Appellant was subject to the probate court's civil commitment order at the time the grand jury convened to reconsider whether he should be recharged with murder in connection with the death of Gilbert Singleton. Nevertheless, by the time Appellant was arraigned and, accordingly, formally accused of the crime, he was no longer subject to civil commitment. Under the circumstances, we believe the trial court had jurisdiction over Appellant during the trial that followed. Since none of the cases upon which Appellant relies in arguing that a conflict exists are factually similar, we conclude that there is no conflict pursuant to App.R. 25.
 {¶ 10} Consequently, Appellant's application for reconsideration pursuant to App.R. 26(A) and his motion to certify conflict pursuant to App.R. 25 are hereby denied.
Waite, J., Donofrio, J. and DeGenaro, J., concurs.